UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAQUELLA CROSS, ISABELLA
DESTEFANO and KAITLYN STEFFLER,
 individually and on behalf
of all others similarly situated,

       Plaintiffs,                    Case No.
                                      Hon.
v.

HOTS INC., a Domestic Profit Corporation
d/b/a VEGAS STRIP GENTLEMAN'S CLUB,
and  STEPHEN J. TITUS,
an individual  jointly and severally,

       Defendants.
_____/

**AVANTI LAW GROUP, PLLC**
Robert Anthony Alvarez (P66954)
Agustin Henriquez (P79589)
Attorneys for Plaintiffs
600 28th St. SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com
_____/

## FIRST CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1.    This is a Collective action brought by Plaintiffs Jaquella Cross,

Isabella Destefano and Kaitlyn against Defendants Hots, Inc., and Stephen Titus.

The Collective, which the Plaintiffs seek to represent, is composed of employees who, during the relevant time period, worked as exotic dancers or entertainers at Vegas Strip Gentleman's Club located in Battle Creek, Michigan. Plaintiffs contend that all collective members were denied their fundamental rights under applicable state and federal wage and hour laws, causing financial loss and injury. Specifically, Plaintiffs complain that Defendants misclassified Plaintiffs and all other members of the class as independent contractors, as opposed to employees, at all times in which they worked as dancers at Defendants' adult nightclub. Plaintiffs contend that Defendants failed to pay Plaintiffs and all other members of the Collective the minimum wages and other benefits to which they were entitled under applicable federal and state laws. Additionally, Defendants engaged in unlawful tip-sharing by requiring dancers in the Collective to share gratuities given to them by patrons with Defendants and their employees, such as doormen and DJs. Plaintiffs, therefore, bring this Collective action seeking damages, back pay, restitution, liquidated damages, injunctive and declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief the Court deems just, reasonable and equitable in the circumstances.

## II.    JURISDICTION & VENUE

2.    This Complaint alleges causes of action under the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA").  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

3.    A substantial part of the events and conduct giving rise to the claims in this action occurred in this Judicial District. Defendant Hots Inc., d/b/a Vegas Strip Gentleman's Club, (Hereinafter "Vegas Strip") reside in this district and operates a nightclub in this District which employed Collective members. Defendant Titus also resides in this District.

### III.   PARTIES & STANDING

4.    Plaintiff Cross, whose consent to sue is attached as *Exhibit A*, is a resident of Battle Creek, Calhoun County, Michigan.  At relevant times, Plaintiff was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and the Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.*, working as an exotic dancer at Vegas Strip located in Battle Creek, Michigan. Plaintiff worked at this Nightclub on various dates starting as early as 2009 and continuing until July 2017 and is a member of the Collective.  Like other Collective members, during the periods Plaintiffs worked at Vegas Strip, she was: (1) misclassified as an independent contractor and as a result, was not paid any wages (or provided other

benefits and rights) which they were entitled to as an employee; (2) required to share tip income with Defendants and their employees as described more fully below.

5.     Plaintiff DeStefano, whose consent to sue is attached as *Exhibit B,* is a resident of Grand Rapids, Kent County, Michigan. At relevant times, Plaintiff was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and the Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.*, working as an exotic dancer at Vegas Strip located in Battle Creek, Michigan. Plaintiff worked at this Nightclub on various dates starting in approximately 2014 and is a member of the Collective.  Like other Collective members, during the periods Plaintiff worked at Vegas Strip, she was: (1) misclassified as an independent contractor and as a result, was not paid any wages (or provided other benefits and rights) which she was entitled to as an employee; (2) required to share tip income with Defendants and their employees as described more fully below.

6.     Plaintiff Steffler, whose consent to sue is attached as *Exhibit C,* is a resident of Springfield, Calhoun County, Michigan. At relevant times, Plaintiff was an employee of Defendants, as defined in 29 U.S.C. §201 *et seq.* and the Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.*, working as an exotic

dancer at Vegas Strip located in Battle Creek, Michigan. Plaintiff worked at this Nightclub on various dates starting in approximately 2014 and continued working there until 2017 and is a member of the Collective. Like other Collective members, during the periods Plaintiff worked at Vegas Strip, she was: (1) misclassified as an independent contractor and as a result, was not paid any wages (or provided other benefits and rights) which she was entitled to as an employee; (2) required to share tip income with Defendants and their employees as described more fully below.

7.      The Defendants are business entities and/or individuals that jointly employ and control the work of members of the Collective that work or have worked at Vegas Strip .

8.      The senior management of Vegas Strip is designated to a Stephen Titus (hereinafter "Titus"). In turn, the employment policies affecting Collective members at Vegas Strip are dictated, determined, controlled and perpetuated in material part by Titus. As such, Titus is a joint employer of all dancers under applicable federal and state wage and hour laws, including the FLSA.

9.      Defendant Vegas Strip, Hots Inc., is a Michigan Corporation with a registered address of 948 N. Raymond Rd., Battle Creek, Michigan, 49014.

10. Vegas Strip and Titus are joint employers of all Collective members and as such are jointly and severally liable for any violations of the wage and hour laws set forth below. Plaintiffs seek to certify a Collective of all exotic dancers who worked at Vegas Strip. Hots Inc., and Titus manage, operate and control the significant business operations of Vegas Strip, and dictate the common employment policies applicable to each dancer, including but not limited to the decisions: (1) to classify dancers as independent contractors, as opposed to employees, and; (2) to require that dancers share their tips. Those policies, which affected and harmed Collective members, were established and implemented, in significant and material part, at Vegas Strip's registered address which is located in Battle Creek, Michigan.

11. Titus, directly or indirectly, holds a significant ownership share in Vegas Strip.

12. Upon information and belief, at all relevant times, Titus has played a significant role in managing, directing and controlling the day-to-day business operations of Vegas Strip.

13. At all relevant times, Hots Inc., and Titus jointly employed all exotic dancers working at Vegas Strip, managed, directed, and controlled the operations at

Vegas Strip, and dictated the employment policies applicable, including but not limited to the decisions: (1) to misclassify dancers as independent contractors, as opposed to employees; (2) to require that dancers share their tips with Defendants; (3) to require that dancers further share their tips with Defendants' managers, doormen, floor walkers, DJs and other employees who do not usually receive tips, by paying "tip-outs;" (4) to not pay any dancers any wages; (5) to demand improper and unlawful payments from Collective members; (6) to adopt and implement employment policies which violate the FLSA and/or other wage and hour laws; (7) to threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.

14.    Defendants knew or should have known that the business model employed was unlawful as applicable laws confirm that all money given to dancers by patrons was defined as a gratuity and the sole property of the dancer.  Despite this, Defendants continued to willfully engage in the acts described below misclassifying dancers and sharing tip income in violation of their legal duties.

15.    At all relevant times, Defendants owned and operated a nightclub business engaged in interstate commerce and which utilized goods moving in interstate commerce. For example, goods sold at Vegas Strip moved in interstate

commerce. On information and belief, during the relevant time period, the annual gross revenues of each Defendant exceeded $500,000 per year.

16.    By reason of the foregoing, Defendants, were at all relevant times enterprises engaged in commerce as defined in 29 U.S.C. §203(r) and §203(s). Defendants and Vegas Strip constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose. At relevant times, Plaintiffs and the Collective were employed by Defendants, enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

## IV. GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

17.    The FLSA applied to Plaintiffs and the Collective at all times in which they worked at Vegas Strip.

18.    No exceptions to the application of the FLSA or state wage and hour laws apply to Plaintiffs and the Collective. For example, no Collective member has ever been a professional or artist exempt from the provisions of those statutes. The exotic dancing performed by Collective members while working at Vegas Strip does not require invention, imagination, or talent in a recognized field of artistic endeavor, and Collective members have never been compensated by Defendants on

a set salary, wage, or fee basis. Rather, Collective members' sole source of income while working at Vegas Strip were tips given to them by patrons.

19.    At relevant times, Plaintiffs and each member of the Collective, defined below, were employees of Defendants under the FLSA and applicable state wage and hour laws.

20.    At relevant times, Defendants were the employers of Plaintiffs and each member of the Collective, defined below, under the FLSA and other applicable law. Defendants suffered or permitted Collective members to work. Defendants, directly or indirectly, employed and exercised significant control over the Collective members' wages, hours, and working conditions.

21.    At all relevant times, all Defendants were the joint employers of Plaintiffs and members of the Collective under the FLSA and/or other applicable law. Plaintiffs' and Collective members' employment for one Defendant is not completely disassociated from their employment by the other Defendant. During the relevant time period, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to the other Collective members who worked as exotic dancers at Vegas Strip in all material respects.

22.    Throughout the relevant time period, Defendants' policies and procedures regarding the classification of all exotic dancers (including Plaintiffs) at Vegas Strip and treatment of dance tips were the same.

23.    As a matter of common business policy, Defendants systematically misclassified Plaintiffs and all Collective members as independent contractors, as opposed to employees. Defendants' classification of Plaintiffs as an independent contractor was not due to any unique factor related to their employment or relationship with Defendants. Rather, as a matter of common business policy, Defendants routinely misclassified all exotic dancers as independent contractors as opposed to employees. As a result of this uniform misclassification, Plaintiffs and the members of the Collective were not paid the minimum wages required, were deprived of other statutory rights and benefits, and therefore, suffered harm, injury and incurred financial loss.

24.    Plaintiffs and members of the Collective incurred financial loss, injury, and damage as a result of Defendants' common practices misclassifying them as independent contractors and failing to pay them minimum wages in addition to the tips that they were given by patrons. Plaintiffs' injuries and

financial loss were caused by Defendants' application of those common policies in the same manner as they were applied to absent Collective members.

25.    During the relevant time period, no Collective member received any wages or other compensation from Defendants. Members of the Collective generated their income solely through the tips received from patrons when they performed exotic table, chair, couch, lap and/or VIP room dances (collectively referred to herein as "dance tips").

26.    All monies Collective members, like Plaintiffs, received from patrons when they performed exotic dances were tips, not wages or service fees. Tips belong to the person they are given to. Dance tips were given by patrons directly to dancers in the Collective and therefore, belong to dancers in the Collective, not Defendants.

27.    The full amount dancers in the Collective are given by patrons in relation to exotic dances they perform are not taken into Defendants' gross receipts, with a portion then paid out to the dancers. Neither Defendants nor any of their affiliated companies issue W-2 forms, 1099 forms, or any other documents to Collective members indicating any amounts being paid from their gross receipts to Collective members as wages.

28.    Plaintiffs and members of the Collective are tipped employees as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. Therefore, as employees of Defendants, Collective members are entitled to: (a) receive the full minimum wages due, without any tip credit, reduction or other offset; and (b) to retain the full amount of any dance tips and monies given to them by patrons when they perform exotic dances.

29.    Defendants' misclassification of Plaintiffs and other Collective members as independent contractors was designed to deny Collective members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to Collective members by patrons, and done to enhance Defendants' profits at the expense of the Collective.

30.    Defendants' misclassification of exotic dancers like Plaintiffs was willful. Defendants knew or should have known that Plaintiffs and the other dancers performing the same job functions were improperly misclassified as independent contractors.

31.    Employment is defined with "striking breadth" in the wage and hour laws. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26, 112 S.Ct. 1344,

1349-50 (1992). The determining factor as to whether dancers like Plaintiffs are employees or independent contractors under FLSA is not the dancer's election, subjective intent or any contract. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

32.    Any contract which attempts to have workers in the Collective waive, limit or abridge their statutory rights to be treated as an employee under FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable and contrary to public policy. Workers in the Collective cannot validly "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Collective agree to be paid less than the minimum wage.

33.    Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempt to coerce dancers in the Collective to waive their statutory rights and elect to be treated as independent contractors. Defendants threaten to penalize and discriminate against dancers in the Collective if they assert their

statutory rights such as through termination and the confiscation of all dance tips, among other adverse conditions and retaliations. Any such retaliation based on the assertion of statutory rights under the wage and hour laws is unlawful. 29 U.S.C. §215(a)(3). Further, it is unlawful for an employer to even threaten to discharge, demote, terminate, or discriminate in the terms and conditions of employment because an employee has made a bona fide complaint against an employer for a violation of wage and hour laws. This protection encompasses the exercise of statutory rights on the employee's own behalf and on behalf of others. Any actual or threatened retaliation against an employee for the assertion of wage and hour law claims violates the state's fundamental public policy to protect the payment of wages and employee's rights.

34.    Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer; (ii) the relative investments of the alleged employer and employee; (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer; (iv) the skill and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

35.    The    totality    of    circumstances    surrounding    the    employment relationship between Defendants and the dancers in the Collective working at Vegas Strip establishes economic dependence by the dancers on Defendants and employee status. Here, as a matter of economic reality, Plaintiffs and all other Collective members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendants. The dancers are not engaged in occupations or businesses distinct from that of Defendants.  Rather, their work is the basis for Defendants' business. Defendants obtain the patrons who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants. Defendants retain pervasive control over the nightclub operation as a whole, and the dancers' duties are an integral part of the operation.

**A.    *Degree Of Control – Plaintiffs And The Other Dancers Exercise No Control Over Their "Own" Or Their Employer's Business.***

36.    Plaintiffs and the other members of the Collective do not exert control over a meaningful part of the nightclub business and do not stand as separate economic entities from Defendants.  Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other dancers in the nightclubs.

37.    Collective members' economic status is inextricably linked to those conditions over which Defendants have complete control. Plaintiffs and the other dancers are completely dependent on Vegas Strip for their earnings. The club controls all of the advertising and promotion without which dancers like Plaintiffs could not survive economically. Moreover, Defendants create and control the atmosphere and surroundings at Vegas Strip, the existence of which dictates the flow of patrons into the club. The dancers have no control over the customer volume or the atmosphere at the nightclub.

38.    Defendants employ guidelines and rules dictating the way in which dancers like Plaintiffs must conduct themselves while working at Vegas Strip. Defendants dictate: the hours of operation; length of shifts dancers must work; the show times during which a dancer may perform; minimum dance tips; determine the sequence in which a dancer may perform on stage during her stage rotation; the format and themes of dancers' performances (including their costuming and appearances); theme nights; conduct while at work (i.e., that they be on the floor as much as possible when not on stage and mingle with patrons in a manner which supports Defendants' general business plan); tip sharing; paying "tip-outs" to

employees who do not normally receive tips from patrons; requirements that
dancer help sell drinks.

39.    Defendants require Plaintiffs and the other dancers in the Collective to
schedule work shifts. Defendants require that each shift worked by a dancer be of a
minimum number of hours. If late or absent for a shift, a dancer is subject to fine,
penalty, or reprimand by Defendants. Once a shift starts a dancer, like Plaintiff, are
required to complete the shift and cannot leave early without penalty or reprimand.

40.    Defendants dictate the manner and procedure in which dance tips are
collected from patrons and tracked. Each time a dancer performs an exotic dance
for a patron and receives a dance tip, the dancer is required to immediately account
to Defendants for their time and any dance tip given to them by the patron.
Additionally, Defendants employ other employees called "checkers," doormen
and/or floor walkers to watch dancers work, count private dances they perform,
and record the amount of any dance tips received. At the end of a work shift,
dancers like Plaintiffs are required to account to Defendants for all dances
performed for the patrons of the nightclub. Then, in addition to any base "rent"
payment, the dancer is required pay a portion of each dance tip given to them by

patrons over to Defendants as "rent." The rent payment typically exceeds 10-15% of each dance tip.

41.     The entire sum a dancer receives from a patron in relation to a dance is not given to Defendants (and/or the nightclubs) and taken into their gross receipts. Rather, the dancers keep their share of the payment under the tip-sharing policy and only pay over to Defendants and the nightclub the portion they demand as "rent" (e.g., $3 from each $20 dance tip received). As a result, there is no pay out by Defendants to the dancer of any wages. Defendants (and/or the nightclubs) issue no 1099 forms, W-2 forms, or other documents to any dancers showing any sums being paid to dancers as wages.

42.     Defendants establish the share or percentage which each dancer is required to pay it for each type of dance they receive dance tips for during the work shift. In addition, per-dance amounts or "tip-outs" must be paid by dancers to the disk-jockey, bouncers/door staff and/or other employees as part of Defendants' tip-sharing policy.

### B.    Skill and Initiative of a Person in Business for Themselves

43.     Plaintiffs, like all other dancers, did not exercise the skill and initiative of a person in business for themselves.

44.    Plaintiffs, like all other dancers, were not required to have any specialized or unusual skills to work at Vegas Strip. Prior dance experience is not required to perform at Vegas Strip. Dancers are not required to attain a certain level of skill in order to work at Vegas Strip. There are no dance seminars, no specialized training, no instruction booklets, and no choreography provided or required in order to work at any of Vegas Strip. The dance skills utilized are commensurate with those exercised by ordinary people who choose to dance at a disco or at a wedding.

45.    Plaintiffs, like all other dancers, did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors. Dancers, like Plaintiffs, own no enterprise. Dancers, like Plaintiffs, exercise no business management skills. Dancers maintain no separate business structures or facilities. Dancers exercise no control over customer volume or atmosphere at Vegas Strip. Dancers do not actively participate in any effort to increase the nightclub's client base, enhance goodwill, or establish contracting possibilities.  The scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendants' guidelines) or how provocatively to

dance which is consistent with the status of an employee opposed to an independent contractor.

46.    Plaintiffs, like all other dancers, was not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenues, as an independent contractor in business for themselves would.

### C.    *Relative Investment*

47.    Plaintiffs' relative investment is minor when compared to the investment made by Defendants.

48.    Plaintiffs, like all other dancers, made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of Vegas Strip. All investment and risk capital is provided by Defendants. Dancers' investments are limited to expenditures on costumes and make-up which they may choose to wear while working, and their own labor. But for Defendants' provision of the lavish nightclub work environment the dancers would earn nothing.

### D.    *Opportunity for Profit and Loss*

49.    Defendants, not dancers like Plaintiffs, manage all aspects of the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendants, not the dancers, take the true business risks for Vegas Strip. Defendants, not the dancers, are responsible for providing the capital necessary to open, operate and expand the nightclub business.

50.    Dancers like Plaintiffs do not control the key determinants of profit and loss of a successful enterprise. Specifically, Plaintiffs are not responsible for any aspect of the enterprises' on-going business risk. For example, Defendants, not the dancers, are responsible for all financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining all appropriate business' insurance and licenses. Even with respect to any "rent" payments, the dancers do not truly pay the Club's "rent" for the exclusive use of space. Rather, the term "rent" is a misnomer or subterfuge for tip-sharing as in reality, Defendants simply demand a set portion of each dance tip given to a dancer.

51.    The extent of the risk that dancers like Plaintiffs are confronted with is the loss of any "base rent" fee due to Defendants when the employee clocks out after each shift. Defendants, not the dancers, shoulder the risk of loss. The dance tips the dancers receive are not a return for risk on capital investment. They are a gratitude for services rendered. From this perspective, it is clear that a dancer's "return on investment" (i.e. dance tips) is no different than that of a waiter who serves food during a customer's meal at a restaurant.

### E.    Permanency

52.    Certain dancers in the Collective have worked at Vegas Strip for significant periods of time.

### F.    Integral Part of Employer's Business

53.    Dancers like Plaintiffs are essential to the success of Vegas Strip. The continued success of Vegas Strip depends to an appreciable degree upon the provision of exotic dances by dancers for patrons. In fact, the primary reason the nightclubs exist is to showcase the dancers' physical attributes for patrons. The primary "product" or "good" Defendants are in business to sell patrons that come to their nightclubs are lap dances performed by the exotic dancers in the Collective that Defendants recruit to work in their clubs and instruct to work in a specific way.

54.    The foregoing demonstrates that dancers in the Collective like Plaintiff are economically dependent on Defendants and subject to significant control by Defendants. Therefore, Plaintiffs were misclassified as independent contractors and should have been paid minimum wages at all times they worked at Vegas Strip and otherwise been afforded all rights and benefits of an employee under federal and state wage and hour laws.

## V.  DEFENDANTS' INTENT

55.    All actions and agreements by Defendants described herein were willful, intentional, and not the result of mistake or inadvertence.

56.    Defendants were aware that the FLSA and state wage and hour laws applied to their operation of Vegas Strip at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors. Defendants and their affiliated companies, were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged. In the vast majority of those prior cases, exotic dancers working under conditions similar to those employed at Vegas Strip were determined to be employees under

the wage and hour laws, not independent contractors. *See e.g., Harrell*, 992 F Supp 1343 (M.D. Fla. 1997). Further Defendants were aware, and on actual or constructive notice, that applicable law rendered all dance tips given to Collective members by patrons when working in Vegas Strip the dancer/Class member's sole property, rendering Defendants' tip-share, rent, and tip-out policies unlawful. Despite being on notice of their violations, Defendants intentionally chose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum wages and require dancers to share their tips with Defendants and their employees, to them in effort to enhance their profits.   Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## VI.  <u>INJURY AND DAMAGE</u>

57.    Plaintiffs and all Collective members suffered injury, were harmed, incurred damage, and financial loss as a result of Defendants' conduct complained of herein.  Among other things, Plaintiffs and the Collective were entitled to minimum wages and to retain all of the dance tips and other tips they were given by patrons. By failing to pay Plaintiffs and the Collective minimum wages and interfering with their right to retain all of the dance tips and other tips they were given by patrons, Defendants injured Plaintiffs and the members of the Collective

and caused them financial loss, harm, injury, and damage. Defendants' conduct causing those injuries was committed in Michigan and emanated to and affected Collective members nationwide.

## VII. COLLECTIVE ACTION ALLEGATIONS

58. Plaintiffs bring this action individually and as a collective action pursuant to 29 U.S.C. § 207 and § 216(b), the requirements of which are satisfied.

59. As described below, all requirements of 29 U.S.C. §216(b) are satisfied as to Counts 1 to maintain a representative action.

60. The Collective to be conditionally certified against Defendants is defined as follows:

> All current and former dancers who performed Vegas Strip Gentleman's Club at any time three years prior to the date the Complaint was originally filed continuing through the present (or the applicable statute of limitations, whichever is longer), in any state and were employed, jointly or otherwise, by any Defendant, but were designated as an independent contractor and therefore, not paid a minimum wage.

(referred to herein as the "Collective").

61. The individuals in the Collective are so numerous that joinder of all members is impracticable.

62.     There are questions of law and fact common to the Collective that predominate over any questions solely affecting individual members, including, but not limited to:

a.      whether Defendants violated the FLSA other applicable wage and hour laws by classifying all exotic dancers at Vegas Strip as "independent contractors," as opposed to employees, and not paying them any minimum wages;

b.      whether the monies given to dancers by patrons when they perform table dances are gratuities;

c.      whose owns the monies given to dancers when they perform exotic dances;

d.      whether Defendants unlawfully required Collective members to share their tips with Defendants and Defendants' employees;

e.      whether Defendants are joint employers of the dancers in the Collective;

f.      whether Defendants failed to keep required employment records;

g.      whether Defendants engaged in unlawful acts by classifying all exotic dancers at Vegas Strip as "independent contractors" as opposed to employees, not paying them any minimum wages, sharing their tips, and threatening to terminate them and impose penalties and other discrimination if they ever tried to exercise their statutory rights; and

h.      the amount of damages, restitution, and/or other available relief (including all applicable civil penalties, liquidated damages and equitable relief) to which Plaintiff and the Collective are entitled.

63.     Plaintiffs' claims are typical of those of the Collective. Plaintiffs, like other members of the Class, was misclassified as an independent contractor and denied her rights to wages and to keep all of her gratuities under the wage and hour laws. The misclassification of Plaintiffs resulted from the implementation of a common business practice which affected all Collective members in a similar way. Plaintiffs challenge Defendants' business practices under legal theories common to all Collective members.

64.     Plaintiffs and the undersigned counsel are adequate representatives of the Class. Plaintiffs are members of the Collective. Given Plaintiffs' injuries and loss, Plaintiffs have the incentive and are committed to the prosecution of this action for the benefit of the Class. Plaintiffs have no interests that are antagonistic to those of the Collective or that would cause them to act adversely to the best interests of the Class. Plaintiffs have retained counsel experienced in Collective action litigation, including wage and hour disputes.

65.     This action is maintainable as a Collective action because the prosecution of separate actions by individual members of the Collective would create a risk of inconsistent or varying adjudications with respect to individual

members of the Collective which would establish incompatible standards of conduct for Defendants.

66.     This action is maintainable as a Collective action because questions of law and fact common to the Collective predominate over any questions affecting only individual members of the Collective and because a Collective action is superior to other methods for the fair and efficient adjudication of this action.

<u>**FIRST CAUSE OF ACTION**</u>
**VIOLATION OF THE FLSA**
**(Failure to Pay Statutory Minimum Wages)**
**(Against all Defendants)**

67.     Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein, unless inconsistent.

68.     At relevant times, all Defendants jointly employed Plaintiffs and all Collective members within the meaning of the FLSA.

69.     29 U.S.C. § 206 requires that Defendants pay all employees minimum wages for all hours worked.  29 U.S.C. § 206(a) provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
> (1) except as otherwise provided in this section, not less than--
>
> (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and
(C) $7.25 an hour, beginning 24 months after that 60th day;

70.     29 U.S.C. § 207(a) provides in pertinent part:

... no employer shall employ any of his employees who in any
workweek is engaged in commerce or in the production of goods for
commerce, or is employed in an enterprise engaged in commerce or in
the production of goods for commerce for a workweek longer than
forty hours unless such employee receives compensation for his
employment in excess of the hours above specified at a rate of not less
than one and one-half times the regular rate at which he is employed.

71.     Like other dancers working at Vegas Strip, Defendants failed to pay

Plaintiffs the minimum wages set forth in 29 U.S.C. §§ 206-207, or any wages

whatsoever.  In fact, Defendants required that dancers like Plaintiffs actually pay

them in order to work.

72.     Defendants failed to pay dancers like Plaintiffs a minimum wage

throughout the relevant time period because Defendants misclassified them as

independent contractors.

73.     The amounts paid to exotic dancers, like Plaintiffs, by patrons in

relation to dances performed were tips, not wages.  Those monies were not the

property of Defendants.  The entire amount collected from patrons in relation to

dances performed by exotic dancers was not made part of any of Defendants' gross

receipts at any point.

74.    As a result, the amounts paid to dancers like Plaintiffs by patrons in relation to exotic dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay dancers, like Plaintiff, minimum wages due. *See e.g., Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013) (granting summary judgment to exotic dancers on the issue of whether dance fees offset a nightclub's wage obligations under the FLSA).

75.    Further, no tip credit applies to reduce or offset any minimum wages due.  The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

76.    Neither of these conditions was satisfied.  Defendants did not inform dancers like Plaintiffs of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and Plaintiffs did not retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m). Defendants never notified any dancers that their dance tips were being

used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions and that they were still due the reduced minimum wage for tipped employees. Rather, Defendants maintained that no dancers were ever due any minimum wages due to their classification as independent contractors and, in turn, were paid none.

77.    Further, Defendants' requirement that dancers like Plaintiffs share their tips and: (i) pay Defendants a portion of all dance tips as "rent"; and (ii) also pay a percentage of their tips as "tip-outs" to other employees who do not customarily receive tips, such as managers, checkers, DJs and bouncers/doormen/floor walkers, was not part of a valid tip-sharing arrangement.

78.    Based on the foregoing, Plaintiffs are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§206 and 207 for all periods in which they worked at Vegas Strip, along with all applicable penalties, liquidated damages, and other relief.

79.    Defendants' conduct in misclassifying dancers like Plaintiffs as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that they were legally entitled to.

80.    The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by an employee pursuant to 29 U.S.C. §216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Moreover, Plaintiffs may recover attorneys' fees and costs incurred in enforcing their rights pursuant to 29 U.S.C. §216(b).

81.    12 U.S.C. § 211(c) provides in pertinent part:

(c) Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

82.    29 C.F.R.§ 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without

limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

83.     29 U.S.C. §215(a)(5) provides in pertinent part:

[I]t shall be unlawful for any person — (5) to violate any of the provisions of section 211(c) of this title…

84.     To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that she worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damage.

85.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

…where the employer's records are inaccurate or inadequate … an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

86.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

87.    Based on the foregoing, Plaintiffs seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-sharing, liquidated damages, prejudgment interest calculated at the highest legal rate, attorneys' fees and costs, and all other costs, penalties, and other relief allowed by law.

## SECOND CAUSE OF ACTION
### VIOLATION OF STATE WAGE AND HOUR LAWS
**(Failure to Pay Statutory Minimum Wages and Unlawful Tip Sharing)**
**(Against All Defendants On Behalf of the Class)**

88.    Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

89.    At all relevant times, in addition to the FLSA, Plaintiffs and the Collective were Defendants' employees within the meaning of applicable state

wage and hour laws mandating the payment of minimum wages: the Michigan Workforce Opportunity Wage Act, MCL §408.411, *et seq.* At all relevant times, all Defendants were the employers of Plaintiffs and all members of the Collective within the meaning of the applicable state wage and hour laws.

90. Defendants Vegas Strip and Titus were joint employers of Plaintiffs and the Class.

91. Defendants failed to pay Plaintiffs and the members of the Collective required minimum wages for the time they spent working at Vegas Strip. Defendants paid no dancer in the Collective any wages at any time. Instead, Defendants unlawfully charged dancers in the Collective money to work by taking a portion of their tips; charging "rent," "house fees" or "stage fees;" requiring dancers to help sell beverages and other goods to patrons; and/or collecting fines and penalties, among other things.

92. Defendants were required to pay all employees minimum wages under the state wage and hour laws, in addition to the FLSA.

93. In applicable circumstances, employers like Defendants must pay premium or overtime rates when employees work beyond specific daily or weekly limits.

94.    Any amount paid directly by a patron to a dancer is a gratuity or tip belonging solely and entirely to her.  All amounts paid to Collective members by patrons in relation to dances, goods sold and other work performed while working at Vegas Strip were tips and gratuities, not wages or service fees; belong solely to the Collective member; and cannot be used to offset Defendants' obligation to pay them minimum wages.

95.    Defendants' conduct requiring Collective members to share their tips and pay "rent" constituted unlawful tip sharing, which financially injured Collective members.

96.    Defendants failed to pay Plaintiffs, or any other member of the Class, any minimum hourly wages for their labor during the relevant time period. Rather, Defendants systematically misclassified all dancers in the Collective as independent contractors, as opposed to employees, so as to attempt to avoid paying Collective members any wages and other benefits due employees. All unpaid wages must now be paid to the Class, along with other relief appropriate under the circumstances.

97.    To the extent Defendants failed to maintain complete records regarding each Collective member's employment, including hours worked and any deductions from wages, Defendants violated applicable state wage and hour laws.

98.    By reason of the foregoing, Defendants violated state wage and hour laws, in addition to the FLSA. As a result, members of the Collective were injured, damaged, harmed and incurred financial loss.

99.    None of the provisions of the state wage and hour laws can be contravened, set aside abrogated, or waived by Collective members.

100.   As a result of the foregoing conduct, Plaintiffs seeks on behalf of themselves and all members of the Collective unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; liquidated damages; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## XIII.  JURY DEMAND

Plaintiffs reserve their right to and hereby request a trial by jury.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Class, prays for an order for relief as follows:

a.    That all Defendants be found jointly and severally liable to Plaintiffs and the Class;

b.    For a declaration that Defendants violated the rights of Plaintiffs and the Collective under applicable law;

c.    For nominal damages;

d.    For compensatory and actual damages;

e.    For restitution of all monies due Plaintiffs and the Collective and disgorged profits from the unlawful business practices of Defendants;

f.    For all back-pay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiffs and members of the Collective to Defendants and their employees;

g.    For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal and state wage and hour statutes and regulations and/or other laws;

h.    For accrued interest;

i.    For an order certifying Count 1 as a collective action under 28 U.S.C. 216(b), and Counts 2 as a nationwide Collective action under Fed.R.Civ.P. 23;

j.    For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA;

k.    For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

Respectfully submitted,

Date: March 14, 2018

AVANTI LAW GROUP, P.C.
*/s/ Robert Anthony Alvarez*
600 28th St. SW
Wyoming, MI 49509
Telephone:(616)257-6807

E-mail: ralvarez@avantilaw.com

## <u>VERIFICATION</u>

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: _2/5/18_

Jaquella Cross

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: 1/22/18

Isabella Destefano

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date:  2.5.18

Kaitlyn Steffler